## Tackett v. Mayo.

(Decided October 2, 1925.)

### Appeal from Floyd Circuit Court.

1. Elections—Statement Required to be Filed in Primary Election Contest Proceedings Need Not be Signed by Contestant—Statement required by Civil Code of Practice, section 739, to be filed in primary election contest proceedings need not be signed by contestant.

2. Elections—On Appeal in Primary Election Contest Failure to Designate Page of Record Where Judgment Found Not Grounds for Dismissal.—In primary election contest proceedings failure of contestant to designate page of record on which judgment appealed from might be found in statement filed as required by Civil Code of Practice, section 739, held not grounds for dismissing appeal in view of Ky. Stats., section 1550-28, requiring original record, pages of which are not numbered, to be sent up in contest proceedings.

3. Elections—Deputy Sheriff's Return Conclusive on Question of Manner of Service of Notice on Contestee in Primary Election Contest Proceedings.—Under Ky. Stats., section 3760, return of deputy sheriff, disclosing manner of service of notice on contestee in primary election contest proceedings, held conclusive, in absence of fraud or mistake.

4. Elections—Notice to Contestee May be Served by Leaving it at Usual Place of Abode After Diligent and Unsuccessful Effort to Locate Contestee.—In primary election proceedings, sheriff seeking to serve contestee with notice provided for by Ky. Stats., section 1550-28, who has made diligent effort to locate contestee, need not wait until very last minute that he has within which to serve notice before serving it by leaving it at contestee's usual

place of abode as authorized by Civil Code of Practice, section 625.

5.  Elections—Notice of Contest Held Properly Served, and Deputy Sheriff's Return Thereon Improperly Quashed.—Service of notice on contestee in primary election contest by leaving it with his wife at his residence and usual place of abode, after diligent and unsuccessful effort had been made to locate him on last day within which service could be made, held sufficient, in view of Civil Code of Practice, section 625, and deputy sheriff's return showing such manner of service improperly quashed.

6.  Time—That is Certain which Can be Made Certain.—That is certain which can be made certain.

7.  Time—When Time is to be Computed from Doing of an Act, Day of Act is to be Included.—When time is to be computed from doing of an act, day of act is to be included in time.

8.  Elections—Notice of Contest Held Sufficiently to Fix Time for Hearing to Confer Jurisdiction.—Under Ky. Stats., section 1550-28, notice to contestee in primary election contest proceedings that contestant would, "on the third day after the service of this notice, . . . at the hour of 8 o'clock a. m., in the courtroom of the courthouse, . . . move . . . to set aside and vacate certificate of nomination," held to sufficiently fix time for hearing to confer jurisdiction.

9.  Elections—Notice of Contest to Contestee Held Not Defective for Failure to Demand that he Make Answer at Time Specified.— Notice to contestee in primary election contest proceedings, that at stated time contestant would move for judgment, held not defective because it did not specifically demand that contestee make his answer at such time.

10.  Judges—Correctness of Ruling on Motion to Vacate Bench Determinable Solely from Affidavits in Support of Motion.—Correctness of court's ruling in denying motion to vacate bench must be measured wholly by affidavits, which must clearly show disqualification, court not being permitted to file counter affidavits.

11.  Judges—Affidavit in Support of Motion to Vacate Bench Held Insufficient.—In primary election contest proceedings, affidavits in support of motion to vacate bench, the purport of which was that, among other things, judge had been in frequent conference with contestee and his counsel, held defective for failure to show that such conferences were with reference to case involved.

12.  Judges—Affidavits in Support of Motion to Vacate Bench Held Insufficient to Show Motion Improperly Overruled.—In primary election contest proceedings, affidavits in support of motion to vacate bench, purport of which was that among other things judge was hostile to contestant and intimate with contestee and his attorneys, to latter of whom he was related by blood or marriage, held insufficient to convict judge of error in overruling motion.

13.  Judges—Affidavits in Support of Motion to Vacate Bench Held Insufficient to Show Error in Overruling Motion.—In primary elec-

tion contest proceedings, affidavits in support of motion to vacate bench, purport of which was that judge had openly and publicly stated that notice of contest filed in proceeding was insufficient, prior to time when its sufficiency was before him for decision, held insufficient for failure to show to whom or under which circumstances judge gave expression to such opinion.

JOHN S. CARROLL, JOHN D. CARROLL, S. C. FERGUSON, JOHN CAUDILL and JOSEPH D. HARKINS for appellant.

O'REAR, FOWLER & WALLACE, C. B. WHEELER, ED L. ALLEN, B. M. JAMES and A. J. MAY for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Appellant and appellee were contenders for the Democratic nomination for county attorney of Floyd county in the primary of August, 1925. The appellee received the largest number of votes on the face of the returns and was awarded the certificate of nomination. Thereupon the appellant filed this contest proceeding contesting that nomination. The lower court sustained a motion to quash the return of the sheriff upon the notice and grounds of contest and also a special demurrer to the same because of lack of jurisdiction of the court, and then dismissed the contest proceeding. From that judgment this appeal is prosecuted.

The appellee has filed a motion in this court to dismiss this appeal because the appellant failed, as he claims, to file the statement required by section 739 of the Code, in that plaintiff, although he gave in the statement he did file the date of the judgment appealed from, failed to state therein the page of the record on which that judgment might be found, and, also, failed to sign the statement filed. We find no requirement in the Code that the statement should be signed. Kentucky Statutes, section 1550-28, governing contest proceedings in primary elections, provides that the party desiring to appeal from the judgment of the lower court shall execute a supersedeas bond in the time and manner therein prescribed. On the execution of this supersedeas bond, this section provides:

"The clerk shall immediately thereafterwards transmit to the clerk of the Court of Appeals the original papers in said contest, including such transcript of evidence as may be furnished or as may be required by the court or by the parties, and said rec-

ord of said contest when received by the clerk of the
Court of Appeals shall be immediately delivered to
the chief justice.''

It will be observed that under this section the origi-
nal record in these contest proceedings is sent to this
court. Original records in the lower courts are never
paged and very seldom bound together. Such is the con-
dition of the record in this case, and so it was impossible
for the contestant to give the page number of the judg-
ment. In such state of case a substantial compliance
with section 739 of the Code is all that is necessary. The
purpose of the Code is to point out and identify the judg-
ment appealed from and to assist the court in finding it in
the record. The judgment in this case was identified in
the statement of appeal filed, by its date, there being no
other judgment entered in this case on that day. Hence
the contestant did substantially comply with the require-
ments of the Code, and his failure to give the page num-
ber of the judgment, since there was no page number to
give, is not to be charged against him. The motion to
dismiss the appeal will, therefore, have to be overruled.

Three questions are presented on this appeal: First,
whether or not the court was correct in quashing the re-
turn on the notice and grounds of contest; second,
whether or not the court was correct in sustaining a spe-
cial demurrer because of lack of jurisdiction in the court,
and, third, whether or not the presiding judge should
have vacated the bench on motion made by contestant for
that purpose supported by affidavits. Section 1550-28
of our statutes, above referred to, further provides:

''Any candidate wishing to contest the nomina-
tion of any other candidate who was voted for at any
primary election held under this act shall give no-
tice in writing to the person whose nomination he in-
tends to contest, stating the grounds of such contest,
within five days from the time the election com-
missioners shall have awarded the certificate of nom-
ination to such candidate whose nomination is con-
tested. Said notice shall be served in the same man-
ner as a summons from the circuit court, and shall
warn the contestee of the time and place, when and
where the contestee shall be required to answer and
defend such contest, which shall not be less than
three, nor more than ten days after the service
thereof.''

The notice and grounds of contest in this case were filed on the last day they could have been filed under the statutes, and this was on a Saturday. They were filed in the circuit clerk's office about nine o'clock in the morning. The contestant's proof on the motion to quash the return of the summons tends to show that at the time the contest was filed one of contestee's attorneys, a kinsman of his, was in the circuit clerk's office and there examined or at least looked over the papers being filed. Shortly thereafter the notice was placed in the hands of a deputy sheriff. What that officer did with the notice can best be ascertained from the return he made thereon, which is as follows:

"The within notice and grounds of contest came to hand on Saturday, August 8, 1925, at 9:45 a. m. Immediately thereafter I called at the office of contestee, Porter Mayo, and found the doors to said office open but no one in said office. I again called at said office at a later hour and found the door open but no one in said office, but found the stenographer who works for said Porter Mayo at her usual desk in the adjoining office of A. J. May, brother-in-law of Porter Mayo, each of them being members of the firm of May, Allen & Mayo, and was informed by said stenographer that the said Porter Mayo had gone to Beaver creek. I then made inquiry from the ticket agent of the Chesapeake & Ohio Railway Company and found that no ticket had been purchased by said Mayo at said office for Beaver creek on this day; I then called at the residence of the said Porter Mayo and was informed by the said Porter Mayo's wife that he was in the town of Prestonsburg and was down at his office.

"I again called at the office of the said Mayo, but he could not be found there. I then called at the residences of A. J. May and Ed. Allen, each of whom is a brother-in-law of said Porter Mayo, and was informed that he was not at either of said residences. I made a search throughout the whole of said day for the said Porter Mayo and at different places in the town of Prestonsburg usually frequented by the said Mayo, but could not find the said Mayo at any of such places. I again called at the residence of the said Porter Mayo and at his usual place of abode at 5:30 o'clock p. m. and could not find him at his

usual place of abode; and I thereupon executed the within notice and grounds of contest upon the said Porter Mayo by delivering a true copy of the same to Reba Mayo, wife of Porter Mayo, at the residence and usual place of abode of the said Porter Mayo, she being a person over the age of sixteen years and residing in the same family with the same and said Porter Mayo, on August 8, 1925, at 5:30 o'clock p. m.

"Given under my hand this August 8, 1925.

"(Signed) M. V. Allen, Sheriff Floyd Co.

By Jerry Allen, D. S."

Contestant also filed affidavits of others to the same effect. On the other hand, contestee's proof on this issue tends to show that he was in the town of Prestonsburg until after the 9:40 a. m. train arrived and until after the mail which came on that train had been received at the post office and distributed; that he was at the post office while this mail was being distributed and there talked to several residents of the town; that he then got in a wagon and rode out of town in a northwesterly direction, but shortly thereafter returned to the town and was seen by several people about the streets; that he went home to dinner at 11:30, and after eating went out to his mother's farm a mile or so south of the town to sow a turnip field, where he remained for some two hours; that on his return to the town he went to the safety vault of the bank where he did business, remained there some little time, after which he was again seen on the streets, it being then about five o'clock; that on his return home for supper his wife gave to him the notice and grounds of contest theretofore served on her by the sheriff. It is also shown, and indeed it is not disputed, that the sheriff first gave to contestee's wife the notice and grounds of contest when he met her on the streets of Prestonsburg about five o'clock in the afternoon; that after he had reported his actions to contestant's attorneys, there being some doubt as to the legality of the same, he went to the home of contestee and there found his wife. The sheriff avers that he asked her to give the notice which he had served on her back to him, and this she did, whereupon he again served it upon her. The contestee's wife says that he simply asked to see it and that when she handed it to him he looked at it a moment and gave it back to her without further comment. On this, however, we must accept the return of the deputy sheriff, for the manner of

his service is involved, and in the absence of a charge of fraud or mistake, his return on this point is conclusive. Kentucky Statutes, section 3760.

On this proof both parties rely upon the case of Mc-Kay v. Grundy, 155 Ky. 115, 159 S. W. 655, to support their respective contentions of the validity and invalidity of such service. It will be noted that the statute requires this notice and grounds of contest to be served as a summons; but in the McKay case, *supra,* it was held that such notice could be served in the manner provided by section 625 of the Civil Code by delivering a copy thereof to some person over sixteen years of age residing in the family or affixing a copy thereof to the front door of the contestee's residence in case the contestee was fraudulently secreting himself so that a summons could not be served upon him. Contestee in this case strenuously argues that the proof fails to show that he was fraudulently secreting himself within the rule laid down in the McKay case. However, the rule of the McKay case was inferentially amplified and extended in the case of Edge v. Allen, 166 Ky. 291, 179 S. W. 212. In that case the notice of contest could not be served on the contestee, John R. Allen, because of the fact that he was in White Sulphur Springs, W. Va., recuperating from a severe and long attack of typhoid fever. His absence from the state and the cause of it were, as stated in that opinion, "generally known and regretted." There was in that case no question made of any attempt upon the part of the contestee to secrete himself or to prevent the service of the notice upon him; but the court intimated that where the contestee so absents himself, with or without good reason, that the notice cannot be served upon him in the same manner as a summons, it may be served upon him as provided by section 625 of the Civil Code. The sheriff's return in the instant case shows that he had made diligent efforts all day long to serve the notice and grounds of contest in question. Contestee admits his absence from the places he usually frequented during the greater part of the morning after the contest was filed, when he took the wagon ride out of town, and the major portion of the afternoon when he was on his mother's farm sowing turnip seed. Another large portion of what remained of the afternoon was consumed by him in the safety vault, a most retired place, and where it could hardly be expected that he would be found. It is true that he files a few affidavits showing that he was seen several times on

the streets during the day, but the overwhelming proof is that he was not to be found during that day on reasonable search in those places where he might fairly be expected to be found.   Prestonsburg is not a very large place. Appellee is a practicing attorney of that town.   Yet during the whole day, his office, his wife, his kinspeople and his business associates were all unable to furnish any information as to his whereabouts.   We, therefore, conclude that, although contestee may not have fraudulently concealed himself, he did, with or without good reason, so absent himself as to permit the service of the notice as here.   It is true that several hours yet remained after the service before the time expired within which the notice had to be served, during which time it is possible it might have been personally served on appellee. But where the sheriff, as here, has made diligent efforts to serve the notice as a summons and has been unable to do so, it does not devolve upon him to wait until the very last minute he has within which to serve the notice before serving it in the manner here allowed.   If, as here, but a short time remains before the expiration of the period allowed for service, and diligent efforts have been made to find contestee, which efforts have proved to be without avail, because contestee has either fraudulently concealed himself or absented himself, with or without good reason, so that service upon him personally is prevented and there is no reasonable assurance that contestee can be found in the short time yet remaining, the sheriff is authorized to serve the notice as allowed by section 625 of the Code.   The lower court, therefore, erred in quashing the return on the notice.

Passing to appellee's second contention, we find that the notice of contest, in so far as it warned appellee to appear and defend, reads as follows:

"The contestee, Porter Mayo, is hereby notified and warned that the contestant, Joe P. Tackett, will on the third day after the service of this notice, together with the grounds of contest attached hereto, at the hour of eight o'clock a. m. in the court room of the court house, in the town of Prestonsburg, Floyd county, Kentucky, move the honorable judge of the Floyd circuit court to set aside and vacate the certicate of nomination as awarded to him, the contestee herein, to declare the same null and void and to award him, the contestant herein, a certificate of nomination as the Democratic nominee for the office

of county attorney, to be voted for at the regular November election, 1925. The said contestee, Porter Mayo, is hereby notified and warned to appear to make answer and defense to the said contest, if any he may have.''

The parties agree that it is the duty of the contestant to fix a time in the notice for contestee to answer, failing which, the notice is defective and the court has no jurisdiction of the contest. Baxter v. Watts, 155 Ky. 12, 159 S. W. 608; Flannery v. Shanks, 155 Ky. 184, 159 S. W. 695. It is first urged that the fixing of the time as ''the third day after the service of this notice'' was not a fixing of a definite time as required by the statute. It is an elementary rule of law that that is certain which can be made certain. It is well settled that when time is to be computed from the doing of an act, that the day of the act is to be included in the time. Newton v. Ogden, 126 Ky. 101, 102 S. W. 865; Lowry v. Stotts, 138 Ky. 251, 127 S. W. 789; Coleman v. Morgan, 154 Ky. 824, 159 S. W. 573; and Damron v. Johnson, 192 Ky. 350, 233 S. W. 745. It is also well settled that if the time within which an act may be done exceeds a week Sunday is included, but if it is less than a week Sunday is excluded. Damron v. Johnson, *supra*. The notice herein served on the contestee was a notice of a legal proceeding. It was framed in the language of the statute and was an evident attempt to comply with the requirement of the statute. Therefore, it is plain that the third day in the notice meant the third day as computed by law, which third day included the day of the service of the notice (Saturday) and excluded the intervening Sunday, thus making it fall on the following Tuesday. Although contestant might have eliminated the question here raised by specifying the exact date, yet the statute does not require the date to be stated, but only that the contestee shall be warned of the time and place when he will be required to answer. As the manner of ascertaining the date was a matter of simple calculation from the facts stated in the notice as to the time, there was no uncertainty or ambiguity in this notice, and the objection thus raised to it is without merit. Baxter v. Watts, and Flannery v. Shanks, *supra,* relied upon by appellee are not in point, as the notices in those cases only required contestee to answer within the limits set by the statute without specifying any exact day. Here the exact day is designated, thus differentiating this case from those relied upon.

It is also urged that the notice does not warn the contestee to appear on this third day and make his answer, but only states that contestant will move for judgment on that day. We regard this objection as supertechnical, since the notice, when fairly read, fairly warns the contestee to make his defense at the time the contestant will move the court to set aside and vacate the contestee's certificate of nomination. Any reasonable man knows that if he does not make a defense at the time of such a motion, the same may go by default, and, therefore, when the contestant states that he will make such motion at such a time and place and the contestee is warned to appear and make answer, any reasonable man knows that the contestant is calling upon the contestee to make his answer at the time of such motion. The lower court sustained the special demurrer for want of jurisdiction on the ground that the notice failed to designate the time when appellee should appear and defend the contest. As seen, the lower court in this was in error and the special demurrer should have been overruled.

As the case must be reversed for the foregoing reasons, it becomes necessary also to consider contestant's contention that the trial judge should have vacated the bench. In support of his motion to that effect, contestant filed certain affidavits, the purport of which is that the trial judge had openly and publicly stated that the notice of contest filed in this contest was insufficient prior to the time when its sufficiency was before him for decision; that he had been in frequent conference with the contestee and his counsel, and that he was hostile to contestant and very intimate with the contestee and his attorneys, to the latter of whom he was related by blood or marriage. Under our practice the trial judge could not file counter affidavits, and the correctness of his ruling in refusing to vacate the bench must be measured solely by the sufficiency of the contestant's affidavits. These affidavits failed to bear out contestant's contention that whatever conferences the judge had with the contestee and his attorneys were with reference to this case. In so far as contestant avers that the judge was hostile to him and friendly to the opposing party and his counsel, to the latter of whom he was related, the affidavits are also insufficient. On this point, the whole matter was considered in the recent case of Nelson v. Commonwealth, 202 Ky. 1, 258 S. W. 674, in an exhaustive opinion to which the inquiring mind is referred. In so far as the

affidavits aver that the trial judge had openly and publicly stated that the notice was insufficient they are likewise insufficient, for, as said in the Nelson case, *supra,* they do "not disclose to whom or the circumstances under which the presiding judge gave expression to any such belief." It may have been, as is suggested in one of the briefs herein filed, that the judge gave expression to this view during some preliminary hearing of the case, and, although such a statement may have been premature, it at least did not disqualify him to further hear the case. The judgment in this record itself shows that the trial judge during one of the hearings of this case made an announcement concerning his idea of the sufficiency of this notice, but on motion of the contestant granted him further time to present authorities for the purpose of convincing him that he was in error. For aught that appears from the affidavits of the contestant, this may have been the time when he complains the judge expressed his views about the sufficiency of the notice.   Although a party is entitled to a trial by an impartial judge, he should at least make it quite clear when he seeks to disqualify a judge that such judge is disqualified. The judge is powerless to dispute the charges of the party seeking his disqualification, and such party should show such facts as to clearly demonstrate the unfitness of the trial judge to sit in that particular case.   As the appellant in this case failed to do that, the trial judge did not err in declining to vacate the bench.

For the reasons herein given, the judgment of the lower court quashing the return on the notice and grounds of contest and sustaining a special demurrer thereto for want of jurisdiction is erroneous and is reversed.   The clerk will issue the mandate forthwith.

Whole court sitting.